IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LUCINDA CARR                                                                           PLAINTIFF

vs.                                                      CIVIL ACTION NO. 1:10-CV-00208-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF SSA                                                                    DEFENDANT

**MEMORANDUM OPINION**

      This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Lucinda Carr for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff filed applications for POD, DIB and SSI on August 16, 2007, alleging disability beginning on October 1, 2005.[1] Docket 6, Exhibit 5, p. 2- 9; Docket 6, Exhibit 6, p. 2-28.[2] Plaintiff's claim was denied initially (Ex. 4, p. 2-4) and on reconsideration. Ex. 4, p. 9-12. She filed a request for hearing (Ex. 4, p. 17-18) and was represented by an attorney at the administrative hearing on July 22, 2009. Ex. 2, p. 19-44. The Administrative Law Judge (ALJ) issued an unfavorable decision on September 11, 2009 (Ex. 2, p. 8-18), and and the Appeals Council denied plaintiff's request for a review. Ex. 2, p. 2-6. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. Because both

---

[1]The plaintiff protectively filed applications for POD and DIB on August 7, 2007 and for SSI on August 3, 2007. Docket 6, Exhibit 3, p. 2-5; Docket 6, Exhibit 6, p. 2, 26.

[2]The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 6. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 6 and not to the Bates number at the bottom of the page.

parties consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on December 7, 1969 and was 35 years old at the alleged onset of her disability. Ex. 5, p. 2. She completed the twelfth grade (Ex. 2, p. 24) and previously worked as a cashier, garment setter, and assistant manager. Ex. 2, p. 26-27, 40. Plaintiff initially claimed disability beginning October 1, 2005[3] due to knee and back problems, high blood pressure and disease of the ovaries. Ex. 6, p. 7. She further alleged weakness in the knees resulting in an inability to stand for long periods of time. Ex. 6, p.7. The record contains additional complaints of sleep apnea, diabetes mellitus and abscesses. Ex. 7 - Ex. 9.

The ALJ determined that plaintiff suffered from "severe" impairments, including morbid obesity, degenerative joint disease of the knees, and disc extrusion, but that plaintiff's alleged sleep apnea did not constitute a severe impairment. Ex. 2, p. 13-14. The ALJ found that the plaintiff's severe impairments (obesity, joint disease and disc extrusion) did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1525, 404.1526, 404.925 and 416.926). Ex. 2, p. 15. He concluded that Listing 1.02 was not met because plaintiff did not demonstrate a major joint dysfunction; he further found the plaintiff's back disorder, evaluated under Listing 1.04, did not result in a nerve root or spinal cord compromise or any muscle weakness, spinal arachnoiditis, or lumbar spinal stenosis. *Id.*

---

[3]At the hearing, the plaintiff stated that she would amend the onset date to the date of her lumbar MRI, January 2, 2007. Ex. 2, p. 43.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except, she can only occasionally climb ramps and stairs. She can never climb ladders, ropes and scaffolds. She can occasionally balance, stoop, crouch, crawl and kneel." *Id.* The ALJ found that the plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Ex. 2, p. 16.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent her from performing her past relevant work. Ex. 2, p. 16. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform unskilled jobs performed at the sedentary level of exertion such as ticket checker, surveillance monitor and telephone quotation clerk. Ex. 2, p. 40-41. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and she therefore was "not disabled" under the Act. Ex. 2, p. 17.

The plaintiff claims that the ALJ erred (1) when he failed to request a medical expert opinion to determine whether the plaintiff's combined impairments, including obesity, met a Listing, (2) when he did not comply with Social Security Administration internal procedures [Docket 9, p. 5-8], (3) when he determined, without medical record support, that the plaintiff's combined impairments did not meet a Listing, and (4) in formulating the RFC without medical record support, resulting in error at step 5 that the plaintiff is capable of performing other work.

3

Docket 9, p. 16-19. The plaintiff additionally claims that the Appeals Council erred in denying the plaintiff's request for review because the state agency physicians were not provided with complete medical records and because the record did not contain a medical expert opinion or a prior RFC. Docket 9, p. 7-9.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[5] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[6] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[7] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[8] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[4]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[5]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[6]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[7]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[8]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

4

physical and mental demands of her past relevant work.[9] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[10] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[11]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[12] even if it finds that the evidence leans against the Commissioner's decision.[13] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[9]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[10]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[11]*Muse*, 925 F.2d at 789.

[12]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[13]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since October 1, 2005, satisfying step one.[14] Ex. 3, p.13. The ALJ found at step two that plaintiff's morbid obesity, degenerative joint disease of the knees, and disc extrusion were severe impairments but that her sleep apnea was not a severe impairment. Ex. 2, p. 13-14.

The plaintiff claims that the ALJ erred in his step three finding that the plaintiff's impairments did not meet the requirements set out in the listings and asserts that the ALJ's determination that her "massive obesity in combination with her severe knee impairments and herniated discs did not medically equal Listings 1.02A and/or 1.04A was not supported by substantial evidence." Docket 9, p. 10. The Commissioner responds that the plaintiff failed to meet *all* the criteria of Listings 1.02A and 1.04A, including failing to demonstrate that she was

---

[14] The plaintiff testified that she had not worked since October 3, 2005. Ex. 2, p. 26. However, her disability applications allege her last work was on October 1, 2005. Ex. 5, p. 2- 9; Ex. 6, p. 2-28.

6

unable to ambulate effectively under Listing 1.02A. Docket 11, p. 10-13.

Listing 1.02 requires "major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02. Listing 1.00B2b defines "inability to ambulate effectively" as:

> (1) ... an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities...
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school...

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00. The ALJ summarily concluded that "Listing 1.02 requires a level of major joint dysfunction that is not met according to the claimant's medical records." Ex. 2, p. 15. He did not provide any further explanation for this step three conclusion. Although the ALJ is not required to engage in a point-by point discussion, an explanation supporting his conclusion is necessary to determine whether the decision is based on substantial evidence. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

In his step two determination of the severity of plaintiff's impairments, the ALJ noted that "[s]he was walking without any assistance" at a physical examination on November 10, 2008. However, he did not discuss any other evidence of her ability to ambulate. The plaintiff testified that she can not walk 100 yards without stopping[15] (Ex. 2, p. 36) and that she could not afford a walking cane. Ex. 2, p. 39.

---

[15]"Q: . . . Could you walk 100 yards without stopping? A: No, sir. Q: Okay. What would happen if you walked that far? A: I'd probably fall out. I just would break out in sweating and my back, it just feel like something heavy is sitting on it." Ex. 2, p. 36.

The Commissioner argues that the "ALJ has the responsibility to determine medical equivalence based on the available evidence in any disability claim," and the plaintiff failed to provide evidence demonstrating all criteria of the listings. Docket 11, p. 10 - 11. Specifically, the Commissioner asserts that affirmative medical findings show plaintiff failed to meet Listing 1.02A's requirement that the claimant be unable to ambulate effectively because the plaintiff "demonstrated the ability to walk unassisted" at the November 10, 2008 physical examination. *Id.*

Certainly, the claimant bears the burden of proof, at step three of the sequential evaluation process, to prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings, and she must establish each element of the listing, *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990), and the plaintiff has "the burden of establishing disability." *McKnight v. Astrue*, 340 Fed. Appx. 176, 180 (5th Cir. 2009). However, the ALJ is obligated to explain why the evidence was not sufficient to support a finding of disability. *Clifton v. Chater*, 79F.3d 1007 (10th Cir.1996)

It is plaintiff's position that she meets the requirements of Listings 1.02 and 1.04 based on record "clinical, objective, and diagnostic evidence from qualified orthopedic physicians." Docket 9, p. 13-14. Given that the ALJ did not adequately explain what elements of the listings were not established, the court is unable to determine whether substantial evidence supports his decision. One medical record stating that she was able to walk without assistance is insufficient to establish an "inability to ambulate effectively" under the Listing, particularly in light of the

ALJ's similar cursory dismissal of the plaintiff's credibility.[16]

The plaintiff challenges what she deems an insufficient explanation of why her obesity in combination with her other impairments did not medically equal Listings 1.02 and 1.04. Docket 9, p. 13-15. The ALJ did state that he analyzed her obesity under each listing, and he acknowledged that "[t]he combined effects of obesity with other impairments can be greater than the effects of each of the [impairments] considered separately." *Id.* He noted the plaintiff's height and weight [62" and 325 pounds][17] but did not offer further examination of the impact of obesity on her functioning. Because the effects of plaintiff's undisputed morbid obesity on her ambulation were particularly important, the ALJ should have explained specifically his considerations.

According to Social Security Ruling 02-1p, "[o]besity can cause limitation of function." SSR-02-1p, p. 6. Such limitations may include deterioration or impairment "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling ...," as well as an individual's "ability to do postural function, such as climbing, balance, stooping, and crouching." *Id.* SSR 02-1p acknowledges that often obesity may affect an individual in a less than obvious manner – "[f]or example, some people with obesity also may have sleep apnea." *Id.* Consequently, the ruling requires an ALJ to assess the effect obesity has upon the

---

[16] The ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Ex. 2, p. 16. The ALJ did not, however, discuss the factors involved in making that determination.

[17] The plaintiff testified that she was 5'2" tall and 325 pounds. Ex. 2, p. 25. The ALJ also noted that her medical records reflected a height of 62 inches and weight of 340 pounds. Ex. 2, p. 13.

individual's ability to perform routine movement and necessary physical activity within the work environment, taking into account fatigue or other combined effects of obesity which, with other impairments, may be greater than might be expected without obesity. SR - 02-1p, p. 6.

The ALJ acknowledged the importance of addressing the plaintiff's obesity in determining whether a Listing was met, and he may have considered her obesity in combination with her other impairments when formulating the residual functional capacity for sedentary work. However, because he did not adequately explain his findings, and the record does not contain any medical evaluation of the effects of obesity on her other impairments, the undersigned is unable to evaluate whether substantial evidence supports his decision.

The plaintiff urges the court to find that the ALJ, and subsequently the Appeals Council, erred in not obtaining a consultative examination, despite her written request for a medical expert opinion pursuant to SSR 96-6p.[18] Docket 9, p. 7. Social Security regulations provide that the ALJ may order a consultative examination where warranted.[19] 20 C.F.R.§ 404.1527. The ALJ is

---

[18]According to plaintiff, the ALJ was required by internal procedure, to obtain a consultative examination on the question of medical equivalency. Docket 9, p. 5-9. The Commissioner disputes this assertion, responding that medical equivalence is determined by the ALJ based on available evidence and, if the plaintiff were correct on this point, a medical source opinion would be required in every disability case. Docket 11, p.10. Because this case will be remanded for further proceedings consistent with this opinion, the court need not address the merits of the plaintiff's argument. However, the Fifth Circuit has confirmed that "[w]hile HALLEX does not carry the authority of law, . . . where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton v. Afpel*, 209 F.3d 448, 459 (5th Cir. 2000).

[19]20 C.F.R.§ 404.1527(C) states:
> Making disability determinations. After we review all of the evidence relevant to your claim, including medical opinions, we make finding about what the evidence shows.
> (1) If all of the evidence we receive, including all medial opinion(s), is consistent, and there is sufficient evidence for us to decide whether

not required, however, to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render a decision. *Turner v. Califano*, 563 F.2d 669 (5th Cir. 1977).

The undersigned finds that the ALJ should have either re-contacted plaintiff's treating physician or ordered a consultative examination to evaluate the combined effects of obesity on the criteria of Listings 1.02A and 1.04A. The ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, as a layman the ALJ may not establish physical limitations or the lack thereof without medical proof to support such a conclusion. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d at 35.

This conclusion is not to suggest that an ALJ must order a medical evaluation to assist in determining equivalency in every case. Rather, the undersigned finds that the record in this case did not contain sufficient medical evidence – from either plaintiff's treating physicians or a

---

        you are disabled we will make our determination or decision based on that evidence. . . .

(3)    If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of sections 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

consultative or agency physician – to establish the effects of obesity on the plaintiff's other severe impairments. As a consequence, the ALJ's decision did not contain support for his determination that the plaintiff's combined impairments did not meet the requirements of the Listings, and his decision was not supported by substantial evidence. The case is remanded for further development of the record.

## IV. PLAINTIFF'S REMAINING ARGUMENTS

Because the case will be remanded for further evaluation consistent with this opinion, the court need not address in detail the merits of the plaintiff's remaining arguments at this time.

## V. CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 19th day of April, 2011.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE